# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Linda Lewis, individually, and as Trustee For
the Next-Of-Kin of Jamie Joseph Lewis,

     Plaintiff,

v.

City of Burnsville, a municipal corporation,
and Steven Stoler, Brett Levin, Michelle
Frascone, and John Smith, all in their official
and individual capacities,

     Defendants.

File No. 19-cv-1117 (ECT/BRT)

**OPINION AND ORDER**

---

Michael Kemp, Hansen, Dordell, Bradt, Odlaug & Bradt, P.L.L.P., St. Paul, MN, for
Plaintiff Linda Lewis.

Leah M. Tabbert, Minnesota Attorney General's Office, Saint Paul, MN, for Defendant
Michelle Frascone.

---

   Plaintiff Linda Lewis is the mother of Jamie Lewis and is the appointed Trustee for

Jamie's next of kin. Compl. ¶ 3 [ECF No. 1]. She filed this action in April 2019, after

police officers employed by the City of Burnsville shot and killed Jamie while he was in

the midst of a mental-health crisis. She brought various state-law negligence and federal

civil-rights claims against the City of Burnsville (the "City") and responding officers

Steven Stoler and Brett Levin[1] (collectively the "Officers"), as well as Defendant Michelle

---

[1]   Linda also sued an as-yet unidentified "officer employed by the Burnsville Police
Department or an employee of the Bureau of Criminal Apprehension" under the name
"John Smith." Compl. ¶ 7. Nothing in the Complaint alleges or permits the Court to infer
any connection between John Smith's conduct and the conduct alleged against Frascone.

Frascone, who works for the Minnesota Bureau of Criminal Apprehension ("BCA") and was involved with the BCA's investigation of the killing. The City and the Officers answered Linda's Complaint, *see* ECF No. 6, but Frascone moved to dismiss, *see* ECF No. 19, asserting sovereign immunity under the Eleventh Amendment to the U.S. Constitution, as well as a failure to state a claim upon which relief may be granted. Linda brings only one of her four claims against Frascone, a claim alleging a civil-rights conspiracy pursuant to 42 U.S.C. § 1985, and she sues Frascone in both her official and individual capacities. *See* Compl. ¶ 6, Count II. Frascone's motion will be granted.

I[2]

Because most of the facts alleged in the Complaint relate solely to the acts by, or information about, other Defendants, they are described briefly here, in only enough detail as is necessary to explain the factual allegations and legal claims against Frascone, the only Defendant who has moved to dismiss the Complaint.

The events giving rise to Linda's claims occurred mainly on or shortly after the night of September 26, 2016. *See generally* Compl. and ¶ 11. Jamie had been struggling with depression for some time, and he was unable to regularly take prescription medication due to its cost. *Id.* ¶ 11. Earlier in the week of September 26, Jamie had lost his job and his relationship with his girlfriend had ended, and for several days he had been making suicidal comments. *Id.* ¶¶ 11, 13. The night of the 26th, Jamie went to his ex-girlfriend's

_____

[2] In describing the relevant facts and resolving the facial attack on subject-matter jurisdiction Frascone brings under Rule 12(b)(1) and her motion under Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in Lewis's favor. *See Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

house and spoke with her for several hours about their recently ended relationship. *Id.* ¶ 13. He expressed that he had no options left. *Id.* ¶ 14. He had been convicted of a felony years before and was legally prohibited from possessing guns, but he referred to a handgun he was carrying and stated that he was not going to prison. *Id.* He then "opened up several beer bottles" and left his ex-girlfriend's apartment, bringing his handgun with him. *Id.* ¶ 15. (The complaint does not say whether Jamie consumed beer in his ex-girlfriend's apartment. It says only that Jamie was "drinking a beer" when officers located him. *Id.* ¶¶ 40, 42.) Jamie's ex-girlfriend called 911 to report that Jamie had just left her apartment and intended to kill himself. *Id.* ¶ 16. She described the relevant parts of their conversation, including that he had a gun and did not want to go back to prison. *Id.*

More than a dozen City police officers responded to that call, including Stoler and Levin. *Id.* ¶ 17. The Complaint describes in greater detail their search for Jamie, which took more than an hour, and the fact that within 90 seconds after an infrared camera deployed by helicopter located the heat signature of a person—Jamie—lying prone on the ground, he had been shot multiple times. *Id.* ¶¶ 17–22. When Levin and Stoler approached Jamie, he posed no threat to anyone other than himself, he did not attempt to flee or actively resist, and he pointed nothing in the direction of officers. *Id.* ¶¶ 34–41. Jamie did not respond to their shouting; at one point, Stoler mistook the beer Jamie was drinking as a weapon, and Stoler responded by shooting Jamie multiple times through the back side of his body, killing him. *Id.* ¶¶ 40–44.

Linda alleges, by way of background, that City officers have a history of responding excessively and unreasonably to individuals who are experiencing mental health crises, and

cites a similar prior incident that occurred six months before Jamie's death. *See generally id.* ¶¶ 23–30. But despite that demonstrated "need to train officers not to automatically shoot anyone engaged in a metal health crisis," neither Stoler nor Levin received anything more than minimal and insufficient training, resulting in Jamie's death. *Id.* ¶¶ 31–33.

BCA, and thus Frascone, did not become involved until the investigation shortly after the shooting. *Id.* ¶ 47. She, along with a BCA colleague named Brent Peterson, interviewed Levin as part of that investigation. *Id.* During that interview, Levin relayed the information he had received prior to the shooting, including that Jamie may have intended to kill himself. *Id.* ¶ 48. The Complaint then alleges as follows with respect to Frascone:

> Hearing this statement that Mr. Lewis may have intended to harm himself, Defendant Frascone suggested to Defendant Officer Levin that Mr. Lewis's intent may have been not merely to end his own life, but to murder other people as well. No other information available to any police or investigators at that time, including Defendants, suggested this.

*Id.* ¶ 49. Following Frascone's "suggestion," Levin "adopted this revised statement as his own, and made it part of his official report on the incident," and his statement contributed to the decision to "clear the officers of the shooting." *Id.* ¶¶ 49, 50, 52, 54. According to Linda, Frascone's suggestion, and Levin's decision to revise his statement accordingly, "was intended to obstruct the proper course of the investigation, to clear officers of wrongdoing, and to ensure that Defendants were not held liable for the death of Mr. Lewis." *Id.* ¶ 55.

In addition to the various claims Linda brings against only the City, Stoler, and Levin, she is suing all Defendants, including Frascone, for conspiring to obstruct justice, in violation of 42 U.S.C. § 1985, by "reporting in the official statement unsupported or incorrect facts, which would tend to increase the likelihood of a finding that the shooting was justified and decrease the likelihood that Defendants would be found liable for [Jamie's] death." *Id.* ¶ 63. The alleged conspiracy was undertaken "to influence the verdict, presentment, or indictment of any grand or petit juror who might consider criminal or civil liability of Defendants" in connection with Jamie's death, thereby hindering Linda's ability to seek justice in the form of criminal or civil liability. *Id.* ¶¶ 64–65.

## II

## A

Frascone moves to dismiss the conspiracy claim under both Rule 12(b)(1), for lack of subject-matter jurisdiction, and Rule 12(b)(6), for failing to state a claim upon which relief can be granted.

A court reviewing a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) must first determine whether the movant is making a "facial" attack or a "factual" attack. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). Here, Frascone makes a facial attack to subject-matter jurisdiction because her challenge accepts as true all of Linda's factual allegations relevant to jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A court analyzing a facial attack "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it

would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

A plaintiff pursuing a claim for a conspiracy to obstruct justice has two different paths available to her under 42 U.S.C. § 1985(2), which provides:

> **(2) Obstructing justice; intimidating party, witness, or juror**
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, [. . .] or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court [. . .]; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, [. . .];
>
> (3) [. . .]the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(2), (3). The text before the first semicolon—the first clause of § 1985(2)—relates to actions challenging conspiracies to obstruct justice in the federal courts, while the text between the first and second semicolons—the second clause of

§ 1985(2)—relates to actions challenging conspiracies to obstruct justice in the state courts. To state a claim under the second clause for conspiring to obstruct justice in the state courts, a plaintiff must allege that the conspiracy was motivated by "class-based, invidiously discriminatory animus." *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986). No such requirement exists for claims arising under the first clause of § 1985(2) for conspiracies to obstruct justice in the federal courts. *Kush v. Rutledge*, 460 U.S. 719, 725–727 (1983).

Linda's briefing confirms that her claim against Frascone exclusively challenges the alleged conspiracy to obstruct justice in federal court under the first clause of § 1985(2), and not to obstruct justice in state court under the second clause of § 1985(2). *See* Mem. in Opp'n at 6 n.1 [ECF No. 29]. Although ordinarily criminal charges arising from a shooting like Jamie's might be expected to be brought, if at all, in state court, Linda argued at the hearing that (in addition to federal civil remedies she contends are implicated in her conspiracy claim) federal statutes, specifically 18 U.S.C. §§ 241 and 242, criminalize certain conduct implicating civil rights, and that the U.S. Attorney might have charged one or more officers under those laws, if not for the conspiracy she challenges here.

### B

Frascone contends that Eleventh Amendment immunity bars the § 1985 claim insofar as it is brought against her in her official capacity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself." *Id.* For that reason, the Eleventh

Amendment generally bars official-capacity suits official, including actions under § 1985, unless that immunity has been waived by the state or overridden by Congress. *Cf. id.* (§ 1983 case). An agency of the state, such as the BCA, is entitled to the same Eleventh Amendment immunity. *Grant v. City of Blytheville*, 841 F.3d 767, 722 n.3 (8th Cir. 2016). Federal courts are without subject-matter jurisdiction to adjudicate claims against defendants who have Eleventh Amendment immunity. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999).

Linda concedes that the Eleventh Amendment bars official-capacity claims for money damages against state officials but argues that it does not bar official-capacity claims for prospective injunctive relief. *See* Mem. in Opp'n at 4 ("The Eleventh Amendment may bar claims against the state for monetary damages, but it certainly does not bar requests for prospective relief such as an injunction, as sought here."). Therefore, the sole dispositive question[3] on Frascone's Eleventh Amendment argument is whether Linda's Complaint "requests injunctive relief against [Frascone] with sufficient clarity" to overcome the general Eleventh Amendment bar. *Andrus ex rel. Andrus v. Arkansas*,

---

[3] Frascone's opening brief also raised the issue of whether official-capacity suits under § 1985, which requires a conspiracy between or among "persons," are actionable in the official-capacity context, where they are functionally claims against the State. *See generally* Mem. in Supp. at 6 [ECF No. 22]. But as Lewis points out, Frascone's authority traced back to *Will v. Michigan Department of State Police*, which made clear in a footnote that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 [or § 1985] because 'official-capacity actions for prospective relief are not treated as actions against the State.'" 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) and citing *Ex parte Young*, 209 U.S. 123, 159–160 (1908)). Frascone does not address this authority in her reply brief, apparently conceding the argument.

197 F.3d 953, 955 (8th Cir. 1999). As becomes clear by Frascone's reply brief, the Parties' real dispute with respect to the official-capacity claim is whether Linda has requested, or even could seek, injunctive relief as to Frascone.

The only specific type of injunctive relief Linda requests is "ordering [the City] to engage in proper training of its officers"—not something that necessarily involves the BCA in any way. Compl. at Prayer for Relief ¶ 2. But Linda does allege that Frascone interviewed Levin in a way that was "intended to obstruct the proper course of the investigation" and "to influence the verdict, presentment, or indictment of any grand or petit juror who might consider" whether Defendants were civilly or criminally liable, Compl. ¶¶ 55, 64, and Linda generally requested "[s]uch other relief as this Court will find just and proper." *Id.* at Prayer for Relief ¶ 5. The Eighth Circuit previously held that a similarly broad request for "such other equitable relief as is just and proper," was "easily understood to include injunctive relief against [an official-capacity state actor], or his successor, if relief needs to be in that form to be effective." *Andrus*, 197 F.3d at 955–56. Thus, at least in principle, Linda's Complaint has arguably requested injunctive relief with sufficient clarity to overcome Frascone's Eleventh Amendment argument.

But that interpretation of the injunctive relief Linda requests from Frascone, while it avoids the Eleventh Amendment bar, runs into another problem: Linda lacks standing to seek that prospective injunctive relief from Frascone because the wrongdoing she alleges against Frascone involves a "discrete event"—Jamie's death and the subsequent investigation—and in no way "suggests a real and immediate threat of repeating that injury" arising from the BCA's role in investigations of similar shootings in the future.

Reply at 3 (citing *O'Shea v. Littleton*, 414 U.S. 488, 496–97 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.")). Unlike the factual allegations that the City has a track record—and thus, absent injunctive relief, likely a future practice—of violating the rights of people experiencing mental health crises, there are no similar allegations of past unconstitutional investigative practices by BCA that might similarly forecast a future that injunctive relief would prevent. Moreover, even if Linda had alleged such a pattern as a general matter, she has not alleged any facts suggesting that she personally is likely to suffer future injury from BCA's investigative practices, as would be required to establish Article III standing to pursue injunctive relief against Frascone in her official capacity. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–07 and n.7 (1983) (to establish an actual controversy sufficient to seek injunctive relief against city for police officers' use of chokeholds, plaintiff would have needed to plausibly allege that he personally "faced a realistic threat from the future application" of the practice). One way or another, then, her official-capacity claim against Frascone is barred, either under the Eleventh Amendment or for lack of Article III standing.

## C

Frascone argues that, insofar as the § 1985 claim is brought against her in her individual capacity, it is barred under *Twombly*. A conspiracy claim under § 1985 requires the plaintiff to allege that she was "injured in h[er] person or property, or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3). Frascone contends that, even assuming that Linda has plausibly alleged the existence of a conspiracy to obstruct justice in the federal courts, she has not plausibly

alleged that the conspiracy proximately caused any personal or property injury, or the deprivation of any right. *See* Mem. in Supp. at 9–10 (citing *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) (citing *Arnold* with approval in § 1983 context)).

Linda identifies two rights of which she (or perhaps Jamie) was deprived as a result of the conspiracy she alleges: the right against the manufacture of evidence, and the right to seek civil redress. Here, neither presents a plausible claim under § 1985.

First, Linda argues that "it is universal and long-established that the manufacture of evidence is a deprivation of a known right." Mem. in Opp'n at 8. In support, she cites the Seventh Circuit's decision in *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012). *See id.* at 8–9. But *Whitlock* is far more specific: it held that a conspiracy to manufacture evidence in a criminal investigation violated the due-process rights of the criminal defendant when it was later used to prosecute him. *Id.* at 583; *see also id.* at 585–86. As Frascone points out in her reply, *Whitlock* is inapposite because here, neither Linda nor Jamie was ever the subject of criminal proceedings related to the shooting, and any manufactured evidence was not used to prosecute either of them. *See* Reply at 8 and n.3 (quoting *Whitlock*, 682 F.3d at 582). Instead, Linda alleges manufactured evidence was used to justify *not* prosecuting any of the officers. Compl. ¶ 54. But "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its substantive manifestations." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005).

Thus, even if Frascone was part of a conspiracy to manufacture evidence, she has not identified how any constitutional right was violated as a result of that conspiracy.[4]

Linda's argument that she was deprived of the right to seek civil redress is belied by the fact that she is here, in federal court, prosecuting her civil claims. *See* 42 U.S.C. § 1985(2)–(3) (providing private right of action to a "party . . . so deprived [by the conspiracy] . . . for the recovery of damages occasioned by such . . . deprivation"). That Linda's sole claim against Frascone risks dismissal if she does not plead that she was denied some other right does not mean that she has been denied her right to bring a civil suit challenging the deprivation of any rights; to the contrary, it means that she is able to have her civil claim adjudicated on its merits—even if that adjudication results in a dismissal of aspects of her claim that have not been plausibly alleged.

---

[4] Even if, as Linda contends, an interested third party to potential criminal proceedings against another person has a constitutional right not have those proceedings tainted by manufactured evidence, that right was not clearly established at the time of Frascone's investigative interview, particularly in view of *Castle Rock*. Therefore, at minimum, Frascone has qualified immunity. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (explaining that to defeat qualified immunity, a plaintiff most show both the existence of a right and that the right was clearly established at the time of the alleged misconduct).

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Michelle Frascone's motion to dismiss the Complaint as to the claims against her [ECF No. 19] is **GRANTED.**


Dated:  October 31, 2019            s/ Eric C. Tostrud
                                                Eric C. Tostrud
                                                United States District Court